

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

August 8, 2025

**BY ECF**

The Honorable Dale E. Ho
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Erden Arkan*, 15 Cr. 13 (DEH)

Dear Judge Ho:

      The Government respectfully submits this letter in connection with the sentencing of defendant Erden Arkan, which is currently scheduled for August 15, 2025, at 11:00 a.m.  For the reasons explained below, the Government requests that the Court impose a sentence of one year of probation and a fine of at least $9,500, and order the defendant to pay $18,000 in restitution.

    **I.**    **Background**

        **A.  Offense Conduct**

      In April and May 2021, the defendant instructed employees of his construction company to make and facilitate straw donations to Eric Adams's 2021 campaign for Mayor of New York City (the "2021 Campaign").  (PSR ¶ 6).[1]  In particular, at the defendant's direction, his construction company organized, facilitated, and paid employees to make a total of approximately $12,450 of straw donations to the 2021 Campaign (in addition to the defendant's own donations).  (PSR ¶ 6).  When the defendant gave this direction, he understood that the 2021 Campaign would seek public funds from New York City based on the misrepresentation that the employees were the true contributors.  (PSR ¶ 6.)  The 2021 Campaign subsequently received approximately $18,000 of matching funds for those fraudulent straw donations.  (PSR ¶ 6).  In November 2023, the Federal Bureau of Investigation ("FBI") conducted an interview of the defendant, during which he falsely denied wrongdoing.  (PSR ¶ 6).

---

[1] "PSR" and "Presentence Report" refer to the Presentence Investigation Report prepared by the United States Probation Office, filed on July 25, 2025.

### B. Procedural History

On January 10, 2025, the defendant waived indictment and consented to the filing of Information 15 Cr. 13 (DEH), which charged him with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. (PSR ¶ 7; Dkt. 1). In that same proceeding, the defendant pled guilty to the Information pursuant to a plea agreement.

### C. Guidelines Range

In the plea agreement, the parties stipulated that the applicable Guidelines range is 0 to 6 months' imprisonment, which is consistent with the Probation Office's calculation. (Plea Agreement at 3; PSR ¶ 60). In addition, as noted in the plea agreement and in the Presentence Report, because the applicable guideline range is in Zone A of the sentencing table and the applicable Guideline does not expressly require imposition of a term of imprisonment, a sentence of imprisonment is not required. *See* U.S.S.G. § 5C1.1(b). (Plea Agreement at 3; PSR ¶ 60). Furthermore, as also noted in the plea agreement and in the Presentence Report, because the defendant received an adjustment under § 4C1.1 and his applicable Guideline range is in Zone A, the Guidelines provide that a sentence other than imprisonment is generally appropriate. *See* U.S.S.G. § 5C1.1 app. n. 10(A). (Plea Agreement at 3; PSR ¶ 61).

### D. The Probation Office's Recommended Sentence

In the Presentence Report, the Probation Office recommends that the Court impose a sentence of one year of probation and a $5,000 fine. (PSR at 21).

### E. The Defendant's Requested Sentence

In the defendant's submission, he requests that that Court impose a sentence of one year of probation. (Dkt. 13 at 22). He does not address whether a fine is appropriate.

## II.  Discussion

### A. Applicable Law

Following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Guidelines continue to provide a critical touchstone. Indeed, while the Guidelines are no longer mandatory, they remain in place, and district courts must "consult" them and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States,* 552 U.S. 38, 49 (2007).

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range

itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7). *See Gall,* 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant;
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Although the Court may not presume the reasonableness of a within-Guidelines sentence, the Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006); *see also Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." (quotations omitted)).

### B.  The Court Should Impose a Sentence of Probation

The defendant committed a serious crime and there is a significant need in this case for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to afford adequate general deterrence. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)-(B). However, when those factors are weighed together with other factors, including the sentences given in comparable cases, the defendant's age, an unusually early acceptance of responsibility—he waived indictment and pled guilty without being affirmatively charged—and a low likelihood of recidivism, the Government agrees with the Probation Office and the defendant that a sentence of one year of probation is appropriate in this case. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(C).

In the course of sentencing a defendant for straw donor fraud, the Honorable Richard J. Sullivan, then a United States District Judge for the Southern District of New York, explained that what makes straw donor fraud "a serious crime is the fact that it compromises and undermines an institution of free elections that are essential to our system of government." *United States v. Hou*, S1 12 Cr. 153 (RJS), Dkt. 202 at 37 (S.D.N.Y. Nov. 21, 2013). Judge Sullivan observed in sentencing another defendant in that same case that although "the intended loss amount"—$8,400 for one of the defendants in that case—was modest and "would not have spelled a difference in the election," straw donor fraud is "about undermining an electoral process and undermining a system that is one of the core institutions of government." *United States v. Pan*, No. S1 12 Cr. 153 (RJS), Dkt. 204 at 31 (S.D.N.Y. Nov. 21, 2013); *see also Hou*, Dkt. 202 at 37 ("the [amount of] money doesn't do it justice in terms of the damage done"). Judge Sullivan elaborated that "the

damage done by this [straw donor fraud] crime in adding to . . . what could fairly be characterized as public cynicism over this process is incalculable," and "it's a very serious crime for that reason because it makes people shrug and say the system is corrupt." *Pan*, Dkt. 204 at 31.

For precisely the reasons identified by Judge Sullivan, the defendant's crime was serious. He carefully planned and executed a scheme in which he recruited employees within his construction company to act as straw donors to the 2021 Campaign. His scheme worked. At his direction, his construction company organized, facilitated, and paid employees to make a total of approximately $12,450 of straw donations, which—as the defendant intended—resulted in the 2021 Campaign receiving approximately $18,000 in fraudulently obtained matching funds. In addition to directing illegal contributions and inducing fraudulent payments by the New York City Campaign Finance Board to the 2021 Campaign, the defendant's conduct also obscured the real source of those payments by instructing his employees to falsely report that they were the true donors. These false statements led to the inclusion of falsehoods in publicly available filings by the 2021 Campaign, which are meant to provide information to the public and press about the identities of those funding political campaigns.

The defendant, to his credit, recognized the criminality of his conduct and accepted responsibility without requiring the Government to expend additional resources to affirmatively bring charges against him or produce discovery materials. The defendant should receive substantial credit for doing so. In light of this unusually early acceptance of responsibility together with the defendant's other mitigating factors, including his age and his apparent low risk of recidivism, and considering the comparator cases referenced above, the Government agrees with the Probation Office and the defendant that a sentence of one year of probation is appropriate.

The sentence imposed by Judge Sullivan in *United States v. Pan*, S1 12 Cr. 153 (RJS), is a useful comparator and confirms that a sentence of probation is appropriate in this case. In that case, Xing Wu Pan engaged in conduct similar in scope and seriousness to the defendant's conduct in this case. In particular, Pan recruited dozens of straw donors and illegally funneled $16,000 in straw donations into John Liu's campaign for Mayor of New York City (the "Liu Campaign"), which was intended to generate between $5,000 and $10,000 in fraudulently obtained matching funds for the Liu Campaign. Unlike the defendant, Pan did not accept responsibility for his conduct and instead proceeded to trial. After a jury trial, Pan was convicted of wire fraud and wire fraud conspiracy. Pan's Guidelines range was 4 to 10 months' imprisonment, and he was sentenced to 4 months' imprisonment.[2] It is consistent for Pan to receive a bottom-of-the-Guidelines sentence, after trial, of 4 months' imprisonment, and for the defendant to receive a

---

[2] Pan's co-defendant, Jia Hou, engaged in more significant criminal conduct than the defendant in this case. Hou, who was the treasurer of the Liu Campaign, coordinated dozens of illegal straw donations that were intended to result in at least $28,000 in fraudulently obtained matching funds, withheld evidence from the grand jury, and lied to federal agents. Hou was convicted at trial of wire fraud, obstruction of justice, and making false statements to a federal agent. Hou's Guidelines range was 12 to 18 months' imprisonment, and she was sentenced to one year and one day of imprisonment.

probationary sentence where he accepted responsibility early and his Guidelines range is 0 to 6 months' imprisonment.  *See* 18 U.S.C. § 3553(a)(6).

### C.  The Court Should Impose a Fine

The Court should impose a fine of at least $9,500—the top of the applicable Guidelines range of $1,000 to $9,500.  As reported in the Presentence Report, the defendant has a net worth in excess of $10 million.  (PSR ¶ 54).  Section 5E1.2(a) of the Sentencing Guidelines "requires a district court to 'impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine.'"  *United States v. Glick*, 142 F.3d 520, 528 (2d Cir. 1998) (citation omitted).  In assessing an appropriate fine, the sentencing court must consider certain factors, such as the defendant's income, earning capacity, and financial resources.  *Id.*  These factors are relevant "only to the amount of the fine, rather than the decision whether to impose a fine."  *United States v. Corace*, 146 F.3d 51, 56 (2d Cir. 1998).  Accordingly, a significant fine of at least $9,500 would be reasonable and appropriate.

### III.   Conclusion

For the reasons set forth above, the Court should impose a sentence of one year of probation and a fine of at least $9,500.  In addition, the Court should enter the proposed consent order of restitution that is attached hereto as Exhibit 1.[3]

>Respectfully submitted,
>
>JAY CLAYTON
>United States Attorney
>
>by: /s/ Robert B. Sobelman
>Robert B. Sobelman
>Assistant United States Attorney
>(212) 637-2616

---

[3] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b).  *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).